[Crim, No. 307.   First Appellate District.—April 14, 1911.]

## THE PEOPLE, Respondent, v. WILLIAM BALMAIN, Appellant.

CRIMINAL LAW—ABDUCTION OF GIRL FOR PROSTITUTION—EVIDENCE—RECEIPT OF LETTER BY DEFENDANT PRIOR TO INDUCEMENT—ADMISSIONS.—Upon a prosecution of defendant for the abduction of a girl under seventeen years of age from her home in San Francisco to place her in a house of prostitution in the town of Point Arena, evidence that before he said anything to her about going there defendant told her he had received a letter from Point Arena, after which he persuaded her to go there with him, was admissible, as being in the nature of admissions of the defendant covering competent and relevant matters.

ID.—CONDITIONAL ADMISSION—PROPOSED CONNECTION—FAILURE TO MOVE TO STRIKE OUT—BURDEN ON OBJECTOR—WAIVER.—Where the testimony was admitted conditionally upon objection thereto, in view of the proposal of the prosecution to connect it with other evidence, it is a settled rule that upon failure of the party promising such connection to prove it, the burden is upon the objecting party to move to strike out the evidence on that ground, and in case of his failure so to move, any possible error in the admission of the evidence is waived, and the objecting party is not thereafter in a position to complain of its admission.

ID.—SUBSEQUENT LETTER FROM PROSECUTRIX TO PROPRIETRESS OF HOUSE OF PROSTITUTION—REVERSIBLE ERROR NOT SHOWN.—A letter written to the proprietress of the house of prostitution by the prosecutrix two months and a half after her first abduction thereto by defendant, indicating that she was willing to continue as an inmate of her house, which was rejected, is of too slight weight as a circumstance to constitute ground of reversal, and the point is not properly raised upon the record as a ground of error where such letter is not incorporated into the record.

ID.—TESTIMONY OF MOTHER OF GIRL—HEARSAY—OBJECTION AFTER AN-
SWER—WAIVER.—Where the mother gave hearsay testimony as to
the statement of the girl that defendant had "induced her to go
away," which was given without objection until after the testimony
was received, it was then too late to object to it as hearsay, and
objection was waived by failure to move to strike it out.

ID.—ALLOWANCE OF LEADING QUESTIONS — ABSENCE OF MERIT — ERROR
NOT SHOWN IN BRIEF.—It is held that accepting defendant's state-
ment of the testimony as correct, there is no merit in the conten-
tion that the court erred in the allowance of leading questions; but
that, further, the point cannot be considered upon appeal, since
appellant's brief fails to point out the folio or page of the record
where the objection was urged.

ID.—CROSS-EXAMINATION OF PROPRIETRESS OF HOUSE OF PROSTITUTION—
DECEIVING LETTER TO MOTHER OF PROSECUTRIX—ABSTRACT ERROR
AS TO DEFENDANT.—Where the proprietress of the house of prosti-
tution was a witness for the defendant, and upon her cross-examina-
tion a deceiving letter from her to the mother of the prosecutrix to
mislead her as to her daughter's employment was introduced, if it
did not tend to show her interest or discredit her testimony, any
error in allowing the same over defendant's objection was purely
abstract as to him and not ground of reversal.

ID.—AGE OF PROSECUTRIX—TESTIMONY OF DATE OF BIRTH—SUBPOENA
FOR BIBLE PROPERLY DISALLOWED.—Where the date of the birth of
the prosecutrix was proved as a fact by the testimony of the girl
and her mother and of her grandmother, and the grandmother stated
that her Bible showed the birth of her own children and not of her
grandchildren, a subpoena for the production of the grandmother's
Bible in court was properly disallowed as independent proof of the
date of the girl's birth, and to contradict the girl and her mother.

ID.—ENTRIES IN BIBLE SECONDARY EVIDENCE—INADMISSIBILITY WHEN
INDEPENDENT PROOF ACCESSIBLE.—Entries in a Bible are only ad-
missible as secondary evidence of the date of a birth, when no other
proof is obtainable. They are not admissible at all as proof of such
birth, when independent proof thereof is accessible and can be pro-
duced in court.

ID.—ENTRIES NOT IMPEACHING EVIDENCE.—No mere entry made by the
grandmother in her Bible could constitute impeaching evidence of
the independent testimony of the child and her mother as to the age
of the child; and where, after the subsequent testimony of the grand-
mother as to her age, there was no attempt to impeach her evidence
by the production of the Bible as against her, its entries could have
no effect as impeaching evidence.

ID.—CLEAR SHOWING AS TO AGE—DISCRETION OF COURT NOT ABUSED.—
It is held that there was a clear showing that the girl was under
seventeen years of age at the time of the trial and was but sixteen

years and five months old when the offense was committed; that there was no showing to the contrary, and that there was clearly no abuse of discretion of the court in denying defendant's motion for the production of the grandmother's Bible.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

John T. Williams, and Wm. A. Jackson, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

KERRIGAN, J.—The defendant was convicted of abduction under the provisions of section 267 of the Penal Code. This appeal is from the judgment and from the order denying him a new trial.

The evidence in the case favorable to the prosecution is, very briefly, as follows:

Sometime early in the month of April, 1910, the defendant met Henrietta Nelson, a girl less than seventeen years of age, at a "nickel dance" in San Francisco.   Their relations became intimate, and not more than a week later she, at his earnest solicitation, left her home, where she resided with her mother, and became a prostitute and an inmate of a house of ill-fame in the town of Point Arena.

The offense of which the defendant was convicted is defined by section 267 of the Penal Code, which reads as follows: "Every person who takes away any female under the age of eighteen years from her father, mother, guardian, or other person having the legal charge of her person, without their consent, for the purpose of prostitution, is punishable by imprisonment in the state prison not exceeding five years, and a fine not exceeding one thousand dollars."

Defendant makes no claim that the verdict is not supported by the evidence; but he relies on certain rulings of the court relating to the admission and rejection of evidence.

1. The first objection is concerning the declaration of Henrietta Nelson, on her direct examination, that the defendant had received a letter from Point Arena.   Defendant asserts

that this statement was pure hearsay, and that his motion to strike it out should have prevailed.

The point is not well taken. It was the theory of the prosecution that the defendant had taken the prosecutrix from her home, and had arranged to, and in fact did, place her in a house of prostitution. In attempting to sustain this theory the following took place:

"Q. (By the District Attorney): Now, then, did you ever have any conversation with him relative to your leaving home? A. Not right away we didn't.

"Q. You had some conversation later on? A. He didn't say right away about going away, or anything; not until he got a letter of some kind.

"Q. Did he say anything to you about your going away? A. Not then. After he got a letter from Point Arena then he started in to talk about it.

"Q. Did he get a letter from Point Arena? A. That is what he said. I never seen it.

"Mr. Williams: I move to strike out the answer as being hearsay.

"Mr. Berry: I think I shall connect that. If the defendant himself stated he got a letter, and I connect it with the defendant, it will be quite material.

"Mr. Williams: I would like to have my objection acted upon.

"The Court: I will overrule the objection.

"Mr. Williams: Exception.

"Mr. Berry: Did he tell you from whom the letter came?

"A. He said from Point Arena.

"Mr. Williams: I make the same objection to this question that is now asked, and upon the further ground that there is no evidence upon which this question can be predicated. If the letter has been received it has not been proved.

"The Court: The prosecuting attorney has said that he will make the connection. Upon that showing I will overrule the objection.

"Mr. Williams: Note an exception."

No error was committed with reference to this testimony. The two answers which the defendant sought to have stricken out were, under the circumstances of the case, in the nature of admissions by the defendant covering competent and rele-

vant matter, and were therefore admissible. But if this be not true, as the testimony was admitted conditionally, and as the defendant failed to move to strike it out on the ground that the promised connection of the testimony had not been made, any possible error in its admission must be deemed waived. When evidence is admitted at a trial on condition that it be subsequently connected with other evidence in the case, it is a principle of law too well settled to require the citation of authority that the burden is cast upon the person objecting to move to strike it out if the connection be not made, and failing to do so he is not in a position to complain of its admission.

2. Defendant next claims that a letter dated July 4, 1910, from the prosecutrix to May Taylor, the proprietress of the house of prostitution in Point Arena, should have been admitted in evidence. Defendant stated that this letter disclosed that at its date the prosecutrix was in San Francisco, and that she desired to return to the house of prostitution in Point Arena; and he argues that this circumstance tends to prove that she originally entered the said house voluntarily, and not at the instance of the defendant. This letter was written about two months and a half after the prosecutrix became an inmate of the house in question; and we are inclined to think that whatever tendency it had was to show that she had become accustomed to the life of the prostitute, and was willing, reluctantly perhaps, to continue it. Assuming, however, that it had any tendency as suggested by defendant, still its bearing in that regard would have been too slight a circumstance upon which to base a reversal of the case. Furthermore, in order to properly raise the point, the defendant should have had the letter incorporated into the record. This he has not done.

3. Defendant also complains of the admission of the following testimony elicited by the district attorney from the mother of the prosecutrix:

"Q. Did Henrietta discuss with you or state to you that the defendant in this case had talked with her about going away, or that he had endeavored to influence her to go away? A. Yes, sir.

"Mr. Williams: I object to that as hearsay.

"The Court: Overruled."

The question called for hearsay testimony, but the answer was immaterial, and moreover, the objection to the question came too late; and as no motion was made to strike it out, the defendant cannot now be heard to complain.

4. Defendant, under heading numbered 5 of his brief, complains that the court allowed, over objection, certain leading questions. Accepting appellant's quotation of the testimony as correct, still there is no merit in his position. Another reason, however, for holding against this contention is that no folio or page of the record is cited. Whenever counsel in a brief fails to comply with this requirement, that part of the brief will be disregarded. (*People* v. *Chutnacut*, 141 Cal. 683, [75 Pac. 340].)

5. On the day that the prosecutrix arrived at Point Arena, May Taylor wrote a letter to the former's mother, which was dated, not at Point Arena, but at Fitchburg. Its evident purpose was to deceive the mother as to the whereabouts and occupation of her daughter. It read as follows:

"Dear Madam:

"Your daughter was with me for a week. Would like to have her back as my husband is away, and babe and I are alone, and I always keep a girl when he is gone.

"Yours rep.

"Write me, Mrs. Taylor, Fitchburg, Calif. Alameda Co.

"P. S.—The reason why she did not come was that she wanted to get money to pay for her room, so she waited until I paid her."

This letter was admitted upon the cross-examination of the witness, who was called for the defendant, and gave testimony tending to exculpate him.

Defendant contends that there is nothing in the record indicating that the letter was written under the direction of the defendant, and that therefore its admission over his objection and exception was prejudicial error.

If this letter did not tend to show the interest of the witness, or to contradict or discredit her testimony, as claimed by the prosecution, it had no bearing in the case either for or against the defendant, and therefore the error, if any, in admitting it was purely abstract, and furnishes no ground for the reversal of the judgment. (*People* v. *Winters,* 125

16 Cal. App.—3

Cal. 331, [57 Pac. 1067] ; *People* v. *Glaze,* 139 Cal. 161, [72 Pac. 965] ; *People* v. *Stokes,* 5 Cal. App. 213, [89 Pac. 997].)

6. Defendant contends that the court erred in refusing his motion for the issuance of a subpoena *duces tecum,* to be served in Alameda county, on the grandmother of the prosecutrix, and having for its object the production of the family Bible of said grandmother then in her possession. The production of this Bible seems to have been desired in order that counsel for defendant might examine it, to ascertain if it contained any entry as to the date of the birth of the prosecutrix, and if such entry should show the date of the birth to be as long as eighteen years before the date of the alleged offense, to use the same as evidence of that fact.

The motion was made upon an affidavit, but as this affidavit is not contained in the record, we are confined to such matters as do appear and which bear upon the question involved. For a proper understanding of the question involved in all its aspects, a somewhat extended statement of the facts is necessary.

The prosecutrix, on Tuesday, the eighteenth day of October, 1910, testified on cross-examination that she was then sixteen years of age, and would be seventeen years of age on the eighteenth day of November, 1910. She also testified that a record of her birth was contained in the family Bible of her grandmother, which was then at the residence of her grandmother in East Oakland.

On Thursday, October 20th, the mother of the prosecutrix testified to the age of said prosecutrix, and that she was born on the eighteenth day of November, 1893. (The offense was committed in April, 1910.) On cross-examination she testified that a record of such birth was in the Bible of her mother (grandmother of the prosecutrix). It further appears that she gave similar testimony as to the record of said birth at the preliminary examination of the defendant in the police court.

On Friday, October 21st, the mother of the prosecutrix was recalled by the defense, and testified that she had been to the home of her mother since last on the witness-stand, and had ascertained that the said Bible contained no record of the birth of the prosecutrix; that it contained only the

record of the births of her mother's children, and no record
of the births of grandchildren.

Later, after the defense had examined several witnesses and
rested its case, and the prosecution had examined several wit-
nesses in rebuttal, including the mother of the prosecutrix,
and immediately after she had stated that her mother was
in court, defendant made the application for the subpoena for
the production of the Bible. The court, however, directed
the grandmother to take the witness-stand, and the appellant
stated that he would reserve the motion until the testimony
was in. The grandmother thereupon testified that she had
at her home a family Bible, and that it contained only entries
as to the births of her own children, and that there was no
entry in said Bible as to the birth of the prosecutrix. She
further testified that she was present at the birth of the prose-
cutrix, and that it occurred in November, 1893.

Upon the close of her testimony defendant stated that he
renewed his motion, and it was denied.

It may be noted that inasmuch as the grandmother was in
court, it was quite unnecessary to obtain a subpoena, but the
object sought could have been attained by an order to her
from the court to produce the Bible; but looking to the sub-
stance of the motion rather than to its form, we will now
discuss the merits of the contention of the appellant.

In discussing the question before this court, as well as in
presenting his motion to the trial court, appellant has made
the fundamental error of assuming that an entry as to the
birth of the prosecutrix in the Bible in question would be
evidence as to the date of her birth. Such is not the law.
Even in cases of pedigree (and this is not a case of pedigree,
but only a case where the date of a birth is involved) entries
in a family Bible are but secondary evidence of the facts
stated, and are not admissible as evidence of the fact when
the persons having actual knowledge of the fact are alive,
and can be and are produced in court. This is the rule laid
down, after a very full discussion of the law, in *People* v.
*Mayne*, 118 Cal. 516, [62 Am. St. Rep. 256, 50 Pac. 654], in
which case a conviction of rape was reversed, because the
court had allowed entries in a family Bible as to the date
of the birth of the girl to be introduced in evidence when the
mother was alive and present. The rule laid down in the

Mayne case is fully supported by the cases therein cited. (*McCausland* v. *Fleming*, 63 Pa. 36; *Leggett* v. *Boyd*, 3 Wend. 376; *Greenleaf* v. *Dubuque etc. R. R. Co.*, 30 Iowa, 301; *Campbell* v. *Wilson*, 23 Tex. 252, [76 Am. Dec. 67]; *Robinson* v. *Blakeley*, 4 Rich. (S. C.) 586, [55 Am. Dec. 703].)

The mother of the prosecutrix had actual knowledge of the date of the birth of her child, and any entry in the Bible not made by her could not be used to contradict her testimony as to such date. If it be said that she testified that the Bible contained no entry on the subject, and that if it in fact did contain such entry, the production of the Bible might contradict her testimony upon that point, the answer is that her testimony, simply that the Bible contained no entry on the subject, was as to a purely collateral matter brought out upon cross-examination, and she could not be contradicted thereon. There is no pretense that she made any entry in the Bible in question, or that she used it to refresh her memory, or based her testimony thereon. She had actual knowledge of the fact and date of the birth of her child, and testified from such knowledge. Any entry or statement in such Bible made by any other person concerned neither her nor the prosecutrix. The only use that could be made of any entry as to the birth of the girl would be for the purpose of contradicting and thus impeaching the testimony of the person who made the entry, if it should prove to be inconsistent with the testimony of such person.

When the motion to obtain a production of the Bible was made, no one had testified who is in any way claimed to have made an entry therein. When the motion was made it is apparent that it was only sought to procure an inspection of the Bible to ascertain, first, if it contained any entry of the birth of the prosecutrix, and if it did, and such entry was inconsistent with the testimony of the girl and her mother, to introduce it as substantive evidence of the fact as to the date of the birth in question. This could not be done. (*People* v. *Mayne*, 118 Cal. 516, [62 Am. St. Rep. 256, 50 Pac. 654].)

It may be said that if the Bible did contain an entry made by the grandmother as to the birth of the girl, such entry might be used to contradict the testimony of the grandmother, if it in fact proved to be inconsistent with her testimony as

to the date of such birth.   But when the motion was made the grandmother had not testified—the purpose of the motion was thus not to obtain evidence that might possibly impeach her.   She subsequently did testify, and the motion was renewed, on the original grounds, and no suggestion was made that the book was sought to obtain possibly impeaching testimony against the testimony of the grandmother.

There is nothing in the record to suggest that the age of the girl was not as testified to by herself, her mother and her grandmother.   According to the evidence, she was still under seventeen years of age at the time of the trial, and was but sixteen years and five months of age at the time of the commission of the offense.   There is no evidence to the contrary, and there is nothing in the record that suggests that her appearance belied the testimony.   If it did, the able and industrious counsel for defendant would doubtless have taken timely steps to procure evidence as to her age, even to the production of this Bible, for he had been apprised, not only of its existence, but that it might contain a record of her birth, as early as at the preliminary examination of defendant in the police court.

It is clear that the court did not err nor abuse its discretion in denying defendant's motion for the production of the Bible.

The judgment and order are affirmed.

Hall, J., and Lennon, P. J., concurred.