[Crim. No. 1959.   Third Dist.   Dec. 19, 1946.]

THE PEOPLE, Plaintiff and Appellant, v. CHRIS B. BE-
NENATO et al., Defendants; LOUISE CLARK, Defen-
dant and Appellant.

352

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Plaintiff and Appellant.

Wallace Shepard and Thomas O'Hara for Defendant and Appellant.

THOMPSON, J.—The appellant, Louise Clark, was indicted jointly with the other defendants, under section 182 of the Penal Code, for conspiracy in Sacramento County, in June, 1945, "to procure one Nina Ezelle, a female, for a house of prostitution." A second count of the indictment charged them with an *attempt* to commit the crime of pandering contrary to the provisions of the Statutes of 1911, page 9 (1 Deering's Gen. Laws, p. 855, Act 1906) by causing, inducing, persuading and encouraging Nina Ezelle "to become an inmate of a house of prostitution." The codefendant, Manuel Strite, was not apprehended or tried. The remaining defendants were jointly tried and convicted on both counts. The appellant, Clark, moved to set aside the indictment for lack of evidence of probable cause. That motion was denied. A jury found all defendants, except Manuel Strite, guilty of both counts of the indictment. Louise Clark moved for a new trial, which was denied as to the first count and granted as to the second count. She appealed from the order denying a new trial on the first count, and from the judgment of conviction of conspiracy as alleged in that count. The State of California appealed from the order granting a new trial as to the second count for an attempt to commit the crime of pandering. The other defendants have not appealed.

We shall first consider the Clark appeal. The appellant contends that: (1) The evidence is insufficient to support the

judgment of conviction of conspiracy to procure Nina Ezelle to become an inmate of a house of prostitution; (2) the court erred in receiving certain evidence, and (3) the indictment fails to state a public offense.

From the evidence which is applicable to the offense of which the appellant, Clark, was convicted under the first count, it appears that she had been previously living in Sacramento with the codefendant Chris Benenato in adultery for about two years. He was a cab driver. She claimed to have left him June 10, 1945. She went to Jackson, Amador County, June 28, 1945, and there leased and maintained a house of prostitution called "Jackie's Place." She admitted leaving some of her clothing in Benenato's rooms at Sacramento when she left him, which she said she was unable to carry with her.

Nina Ezelle was fourteen years of age. She lived with her parents at Broderick, near Sacramento. She had been committed to the Detention Home. She frequented cocktail bars, in Sacramento, where she met the defendants, Benenato, Francis and Strite in the month of June. She repeatedly engaged in sexual intercourse with each of them. She was not married to any of them. She was afflicted with gonorrhea. June 29th, Francis took her to Dr. Elvin O. Brown, in Sacramento, where both of them underwent treatment for venereal diseases. He paid $40 for the treatments. Francis urged her to enter a house of prostitution and to engage in the business of prostitution. She consented to do so. Marcella Baccellia, a girl friend of Nina's, testified that they drove in an automobile with the defendants Benenato and Francis to "Stan's Barbecue" in Sacramento the latter part of June, on which occasion she heard Francis talking with Nina about her engaging in prostitution. Both Benenato and Francis knew that the defendant Clark was maintaining a house of prostitution at Jackson. Benenato took Mabel Massmedzu in his automobile from Sacramento to Clark's resort at Jackson the latter part of June. She saw him there at least twice. July 1st, Benenato took Nina in his automobile from Sacramento to Clark's resort in Jackson. They were accompanied by Mabel, a colored girl. They all entered the house, and went with an inmate named Juanita to the kitchen where they met and talked with the defendant Louise Clark about Nina's becoming an inmate of that house of prostitution. Clark told Nina she would have to be examined by a physician, and accompanied her to the office of Dr. Williams, in Jackson, for that

purpose. Nina told Clark she had a venereal disease. Dr. Williams confirmed that fact and told her "she couldn't work there." Clark and Nina then left the physician's office and returned to "Jackie's Place." That same day Benenato took Nina back to Sacramento, where she subsequently engaged in prostitution with various men in Benenato's rooms in that city. Clark never saw Nina after she left her place in Jackson. Nina was later returned to the home of her parents in Broderick. After the defendant, Benenato, had been apprehended, Clark read of his arrest in a newspaper and went to Sacramento and visited him in jail. She arranged for the bond upon which he was released from custody, and she procured the attorney who represented both of them at the trial.

The record contains evidence which we may assume warranted the jury in finding that the defendant Clark was guilty of encouraging Nina Ezelle to become an inmate of her house of prostitution in Amador County, contrary to the provisions of Statutes of 1911, page 9, and of attempting to encourage her to enter that house for the purpose of engaging in prostitution. There is a conflict of evidence in that regard. But, with full knowledge of Nina's desire to do so, Clark accompanied her to the doctor's office in Jackson for a physical examination. The jury had a right to assume from that fact, under the circumstances of the case, that if the physician's examination had been favorable Clark would have accepted her as an inmate of her house, although she did state that she would not have done so because she was too young. If Nina's youthfulness was the controlling factor in refusing to accept her, there was no occasion for Clark to take her to a physician for examination.

The statute provides that:

"Any person who shall procure a female inmate for a house of prostitution, or . . . persuade or *encourage* a female person to become an inmate of a house of prostitution, or . . . any place in which prostitution is encouraged, or allowed within this state, . . . shall be guilty of a felony, to wit: pandering. . . ."

The appellant was charged with conspiracy to commit the crime of pandering, and also with an attempt to commit pandering.

The indictment specifies two overt acts of the appellant, Louise Clark, in furtherance of the alleged conspiracy and the "attempt to commit pandering." Act number four asserts that on July 1st, 1945, "in pursuance of said conspiracy and

to effect its object," Louise Clark "did then and there receive the said Nina Ezelle in a house of prostitution," in the County of Amador. Act number five alleges that, on July 1st, 1945, "in pursuance of said conspiracy and to effect its object," she caused Nina Ezelle to be physically examined by a physician "in order that said Nina Ezelle could be placed in said house of prostitution situated in the City of Jackson."

In the present case the appellant was charged with and convicted of the crime of conspiring to commit pandering by enticing and encouraging a female girl to become an inmate in a house of prostitution. Section 182 of the Penal Code provides that the crime of conspiracy is consummated when,

"Two or more persons conspire:

(1) To commit any crime;

. . .

(5) To commit any act injurious to the public health, *to public morals*, or to pervert or obstruct justice, or the due administration of the laws."

It is not disputed that pandering is injurious to public morals, or that its perpetration may be the subject of a conspiracy to commit the crime prohibited by said statute. Section 184 of the Penal Code provides that:

"No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement and the trial of cases of conspiracy may be had in any county in which any such act be done."

It is not necessary that a party to a conspiracy shall be present and personally participate with his co-conspirators in all or in any of the overt acts. It is sufficient if there be some [one] act, . . . done within this state to effect the object thereof, by one or more of the parties to such agreement." And the cause may be tried in "any county in which any such act be done." (§ 184, Pen. Code.) Where a number of persons conspire to commit a crime, each is criminally responsible for the acts of his co-conspirators performed in furtherance of the agreed plot. (*People* v. *Creeks,* 170 Cal. 368, 374 [149 P. 821] ; *People* v. *Harper,* 25 Cal.2d 862, 871 [156 P.2d 249] ; *People* v. *Stoddard,* 48 Cal.App.2d 86, 89 [119 P.2d 160].)

There are facts and circumstances in this case from which the jury was warranted in finding that the appellant conspired with her codefendants to procure females to become inmates of her house of prostitution in Amador County. It also

appears that she conferred with the girl Nina about becoming an inmate of her house, and also performed the overt act of arranging for a medical examination of Nina Ezelle and of accompanying her to the office of a physician in Jackson for the purpose of determining whether the girl had a venereal disease, with the object of receiving her as an inmate of her house if the examination had proved favorable. ■ The fact that the fulfillment of the purpose of the conspiracy was prevented by an unfavorable medical examination, over which the appellant had no control, in no way relieves her from responsibility for the crime of conspiracy to commit pandering (*People* v. *Grubb,* 24 Cal.App. 604, 608 [141 P. 1051]), or for the separate offense of attempting to commit the crime of pandering.

■ There is ample evidence of other overt acts performed by the codefendants in Sacramento in furtherance of the conspiracy to induce Nina to become an inmate of the house of prostitution in Jackson, as specifically alleged in the indictment. It satisfactorily appears that Francis induced and persuaded her to engage in prostitution as a business, and the codefendant, Benenato, took her in his automobile from Sacramento to Jackson for that purpose. He was present when that subject was discussed by Clark in the kitchen of her house. ■ Since some of the overt acts were performed in Sacramento by co-conspirators in furtherance of the scheme or plan of procuring inmates for the house of prostitution, the Superior Court of Sacramento County had jurisdiction to try the case. Either Sacramento or Amador County had jurisdiction of the cause. (§ 182, Pen. Code; *People* v. *Johansen,* 66 Cal.App. 343, 346 [226 P. 634]; see, also, *People* v. *Mandell,* 35 Cal.App.2d 368, 371 [95 P.2d 704].)

■ There is sufficient evidence of the conspiracy and of the concerted action of the three codefendants, Clark, Benenato and Francis, to procure or encourage Nina to become an inmate of Clark's house of prostitution at Jackson, Amador County. There is no direct evidence that the three defendants had previously conferred together in procuring Nina Ezelle to become an inmate of the Clark house of prostitution. But the jury was warranted in drawing the inference from the facts adduced that they had conspired to procure female inmates for that house of prostitution in violation of the provisions of the statute. They were previously acquainted in Sacramento. Clark knew Francis as a cab driver. She knew that Francis and Benenato "worked together, as cab drivers."

Francis became a bartender. Both men knew that Clark had opened and was operating a house of prostitution at Jackson. Both of them had previously visited that house. Clark had lived and cohabited with Benenato in Sacramento for sometime. They were not married. When she left him about the middle of June, she left some of her clothing in his apartment. Both Benenato and Francis had sexual intercourse with Nina before she was taken to Jackson. They were in the automobile together when Francis persuaded her to become an inmate of the house of prostitution. Benenato had previously taken another girl, Mabel Massmedzu in his automobile to Clark's house at Jackson, when she became an inmate of that place. He was present in the kitchen when Clark discussed with Nina the proposition of becoming an inmate of the house, and when arrangements were made by Clark for Nina's examination, for the purpose of receiving her as an inmate. He knew that the only reason Nina did not remain in that house was because the physician found her to be diseased and told her she could not work there. Benenato then took her back to Sacramento in his own automobile and kept her in his rooms for sometime, where she engaged in prostitution. After Benenato's arrest, the appellant went to Sacramento and talked with him in jail. She arranged for his bail bond, and engaged the attorney who represented both of them at the trial. The foregoing facts amply support the verdict and judgment convicting the appellant of the crime of conspiracy as charged in the first count.

　　█ The gist of the crime of conspiracy, under section 182 of the Penal Code, is the unlawful agreement between the conspirators to commit an offense prohibited by the statute, accompanied by an overt act in furtherance thereof. █ The conspiracy may be established by circumstantial evidence. (*People* v. *Black,* 45 Cal.App.2d 87 [113 P.2d 746]; 5 Cal.Jur. 497, § 3.) █ It is not necessary to prove by direct evidence the express agreement between the co-conspirators. That agreement may be inferred from the action and conduct of the defendants in mutually carrying out a common purpose in violation of the statute. (*People* v. *Montgomery,* 47 Cal.App. 2d 1, 11 [117 P.2d 437]; *People* v. *Yeager,* 194 Cal. 452 [229 P. 40]; *People* v. *Jones,* 136 Cal.App. 722 [29 P.2d 902]; Underhill's Crim. Ev. p. 1401, § 773.) In the Jones case, at page 726 thereof, the court quoted with approval from *People* v. *Burke,* 18 Cal.App. 72 [122 P. 435], as follows:

" 'In proving a conspiracy it need not be shown that the parties actually came together and agreed to enter into and pursue a common design. The existence of the assent of minds which is involved in a conspiracy may be, and from the secrecy of the crime usually must be inferred by the jury from the proof of the facts and circumstances which taken together, apparently indicate that they are mere parts of the same complete whole.' [Citing authorities.]"

The foregoing authorities are applicable to the facts of the present case. While there is an absence in this case of direct proof of a previous agreement between the appellant and the other codefendants to procure inmates for the Clark house of prostitution, the circumstances adduced sufficiently support the inference that they did so conspire to commit the crime.

■ The appellant asserts that the court erred in admitting evidence that the codefendants Benenato and Francis had intercourse with Nina in the rooms of Benenato in Sacramento after the girl had been brought back from Amador County. It is asserted that the alleged conspiracy had then terminated and that the evidence was incompetent and prejudicial. We think this contention is without merit for the reasons that the appellant failed to assign any specific ground of objection, and the record indicates that the general objection was withdrawn with the mere reservation of a right to subsequently move to strike out the evidence, which motion was not made.

The codefendants, Benenato and Francis, had been separately indicted for statutory rape upon Nina Ezelle. That case was consolidated for trial with the indictment against all defendants for conspiracy to commit the crime of pandering. At the trial it appeared that, pursuant to the alleged conspiracy, Nina was taken to the Clark house of prostitution in Amador County for the purpose of becoming an inmate thereof. She was then taken by Clark to a physician in Jackson for medical examination for that purpose. On account of an unfavorable examination Nina did not become an inmate of the house, but was returned to Sacramento and was thereafter kept in the rooms of Benenato where she engaged in intercourse with those defendants and with other men. At the trial, on examination of the witness Nina Ezelle, the prosecution sought to adduce evidence of those subsequent acts of intercourse. They were, of course, competent against Benenato and Francis on both indictments against them for statutory rape. It was contended they were also competent against

the appellant, Clark, on the theory that the alleged conspiracy was continuing in its nature and had not been terminated. We think the record fairly discloses the fact that evidence of those acts was admitted,-subject to a motion to strike it from the record upon failure of the prosecution to subsequently adequately connect them with the alleged conspiracy of Clark. The statement of appellant's attorney appears to recognize that fact. He said, "We just want to *reserve the right* to argue it, *to make our motion to strike and argue it."* The appellant failed to move to strike the evidence from the record. Moreover, the objection to that evidence fails to assign the ground upon which the appellant relied to exclude it. The record in that regard is as follows:

"Q. And what occurred between you and Curly Francis? Mr. Shepard: May it be understood this is objected to as to the defendant Clark? Mr. Mundt: It is the theory of the prosecution that this evidence is part of the general conspiracy; that the conspiracy continued, the charge of conspiracy to commit pandering continued throughout the entire association of these people with this young girl. The Court: Overruled. I think it is admissible. I presume you [the District Attorney] will explain your theory later in that regard? Mr. Mundt: Yes. Mr. Shepard: Well *is it subject to a motion to strike?* The Court: It is admissible under a theory I don't like to express to the jury at this time. If you want me to I will. Mr. Shepard: *We-just want to reserve the right* to argue it, *to make our motion to strike and argue it."*

It is not contended the appellant ever thereafter moved to strike the evidence from the record. Nor did the appellant ask the court to instruct the jury to disregard it, or to limit it in its application to the other codefendants only. Under such circumstances we are of the opinion the appellant waived her objection to that evidence.

It has been frequently held that when evidence is adduced in good faith upon the theory that it is competent, or that it will be properly connected, subject to a motion to strike it from the record, and that motion is not subsequently urged, the appellant may not complain of the erroneous ruling, but is deemed to have waived the objection. (*People* v. *Terry,* 18 Cal.App.2d 199 [63 P.2d 307]; *People* v. *Page,* 86 Cal.App. 148 [260 P. 591]; *People* v. *Balmain,* 16 Cal.App. 28, 32 [116 P. 303].) In the Terry case, *supra,* the rule is stated as follows:

"As to appellant's second proposition, the evidence was received over objection subject to a motion to strike. However, since appellant did not make a motion to strike the testimony after it was received, he may not urge in this court that the ruling was erroneous. [Citing authorities.]"

In the present case, we think the appellant's attorney recognized the fact that the evidence was received subject to a motion to strike it from the record, which motion he failed to make. The objection, for that reason, and because no ground for excluding it was stated, was therefore waived. If the prosecution failed to connect that evidence with the charge of a continuing conspiracy, the appellant should have moved to strike it from the record, or at least should have requested the court to instruct the jury that it was admitted but confined in its application to the defendants Benenato and Francis only.

Finally, the appellant contends that count one of the indictment fails to state a cause of action for conspiracy to commit the crime of pandering, for the reason that it omits the word "inmate" and merely charges that the defendants conspired "to procure one Nina Ezelle, a female, *for* a house of prostitution." The indictment, however, does further recite as overt act number 5, that the appellant, Clark, in furtherance of the alleged conspiracy, did "cause the said Nina Ezelle to be given a medical examination . . . *in order that said Nina Ezelle could be placed in said house of prostitution. . . .*" The appellant failed to demur to the indictment, although she did move to dismiss it on the sole ground that she had been committed *without probable cause,* which was denied.

We are of the opinion the first count of the indictment sufficiently states a cause of action for conspiracy to commit the crime of pandering as defined by Statutes of 1911, page 9 (1 Deering's Gen. Laws, p. 855, Act 1906), in view of the amendment to section 952 of the Penal Code in 1929. (*People* v. *Miller,* 2 Cal.2d 527 [42 P.2d 308].) The section last mentioned provides that the charge "shall be sufficient if it contains *in substance,* a statement that the accused has committed some public offense therein specified." It further declares that the charge "may be in the words of the enactment . . . *or in any words sufficient to give the accused notice of the offense of which he is accused.*" (Italics added.) Certainly the appellant was clearly charged in the first count of the indictment with conspiracy to commit pandering. She

was not charged with *procuring* an inmate for a house of prostitution. She was charged with participating in a conspiracy, or a concerted plan to commit the crime of pandering. The statute provides that any person who ''by any device or *scheme,* shall cause, induce, persuade *or encourage* a female person to become an inmate of a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state,'' shall be guilty of pandering. The indictment clearly charges that appellant conspired to procure the named female ''for a house of prostitution.'' It further specifies that she ''caused'' the female to be given a medical examination ''in order that said Nina Ezelle *could be placed in said house of prostitution.''* The statute does not require that a female shall be encouraged to become an inmate *for the purpose of engaging in prostitution,* in order to constitute the crime of pandering. It is sufficient if she is induced or encouraged to become an inmate of a house where other persons engaged in prostitution, or where prostitution is permitted to be practiced.

In the present case the word ''inmate'' was not used in the indictment. Section 952, however, states that it is not necessary to use the exact language of the statute. It is sufficient if equivalent language is employed so as to inform the accused of the offense with which he is charged. The indictment does use language which means that the appellant conspired to procure, induce or encourage Nina Ezelle to become an inmate of the house of prostitution. The word ''inmate'' as it is used in the statute in question merely means that the female is induced or encouraged to occupy, live or abide in the house. (*People* v. *Matsicura,* 19 Cal.App. 75 [124 P. 882].) To allege that a female is procured ''for a house of prostitution,'' and that she was caused to be given a medical examination ''in order that . . . [she] *could be placed in said house of prostitution,''* is equivalent to stating that she was encouraged to occupy, live or remain in the house. We are unable to perceive how the appellant could have been prejudiced by the omission from the indictment of the word ''inmate,'' since comparable language was used to clearly indicate that she was charged with violating the statute against pandering. Section 960 of the Penal Code provides that:

''No indictment, information or complaint is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of

form which does not prejudice a substantial right of the defendant upon the merits.''

Moreover, if there is an uncertainty in that regard, the indictment was susceptible of amendment and the appellant waived that defect by failure to demur to the indictment. (*People* v. *Miller, supra.*) In the case last cited the court said, with relation to an alleged defective information:

''. . . The defendant did not demur to the information. The claim is that the information does not comply with the requirements of sections 950, 951 and 952 of the Penal Code. Section 952 provides that the statement of the offense may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the defendant notice of the offense of which he is accused. We are satisfied that the matter contained in the statement of the charge was a sufficient compliance with the code requirements. (31 Cor.Jur. 742; 14 R.C.L. 185.) If there was any noncompliance with the sections in the respect claimed, the defect was waived by failure to demur. (Secs. 1004, 1012, Pen. Code; *People* v. *Mead,* 145 Cal. 500, 503 [78 P. 1047]; *People* v. *Perfetti,* 88 Cal.App. 609, 615, 616 [264 P. 318].)''

In the preceding case it was contended the information failed to allege facts showing an overt act constituting an attempt to commit murder. In the present case the overt act of the appellant was specifically alleged.

We conclude that the indictment in this case was not defective for the reason claimed, and that the appellant waived that alleged defect by failure to demur to the indictment.

The cases cited by the appellant in support of her contention that the first count of the indictment is defective, are not in conflict with what we have previously said in that regard. They were determined before section 952 of the Penal Code was amended in 1927. We are satisfied there was not a miscarriage of justice in determining that the appellant was guilty of conspiring to commit the crime of pandering.

With respect to the appeal which was perfected by the State from the order granting appellant's motion for a new trial upon the second count of the indictment, for an alleged attempt to commit the crime of pandering, we are of the opinion the trial court erred. The three defendants, including the appellant, were jointly charged in the second count and convicted of the crime of attempting to commit pandering in

Sacramento County, by attempting "to cause, induce, persuade and encourage Nina Ezelle, a female person, to become an inmate of a house of prostitution." For the reasons previously stated we are of the opinion there is sufficient evidence to show that the appellant and the other codefendants planned and participated in Sacramento in the attempt to procure female inmates for her house of prostitution in Jackson. The jury so determined by its verdict on the first count. They were all accomplices, as that term is defined in section 1111 of the Penal Code. They were not mere accessories thereto. Certainly there is evidence that the appellant was concerned in the commission of the crime. In view of the verdict upon the first count, independently of appellant's overt act done in Amador County, it may not be said there is no other evidence that she aided, abetted or encouraged the commission of the crime. If she did aid and abet the attempt she must be deemed to have been a principal in that crime and subject to prosecution therefor in any county having jurisdiction of the offense. (Pen. Code, § 31.)

The chief and inducing overt acts in attempting to procure Nina Ezelle to become an inmate of the Jackson house of prostitution were performed by appellant's codefendants, Benenato and Francis, in Sacramento. As a principal the appellant was responsible for such acts in furtherance of their concerted plan to attempt to commit the crime. It is true that the only overt act of the appellant which appears in evidence, was performed by her in Amador County. That was the reason assigned by the trial judge for granting the motion. But the attempt to induce the girl to become an inmate of the house of prostitution occurred or originated in Sacramento, primarily through the persuasions and conduct of Benenato and Francis. But the appellant Clark aided, abetted and encouraged that attempt, as the jury determined by its verdict on the first count of the indictment. Her participation in conspiring to commit the crime of pandering made her a principal in the commission of the attempt to commit the offense, which originated in Sacramento County. (*People* v. *Wright*, 26 Cal.App. 2d 197, 207 [79 P.2d 102].) Even though she did commit the overt act of furthering that attempt by taking the girl to a physician in Amador County for a medical examination and she was not present in Sacramento when her codefendants persuaded the girl to become an inmate of the house, she was, nevertheless, a principal in the attempted crime. It

is apparent the offense was partly committed in both Sacramento and Amador Counties. That fact gives jurisdiction in either county. Section 781 of the Penal Code provides that:

"When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

Even though the appellant was not present in Sacramento when the girl was induced to become an inmate of the house, she was nevertheless a principal in that attempt to commit the crime, and she would be guilty as such principal the same as though she had been present and had aided and abetted therein. Section 792 of the Penal Code provides that:

"The jurisdiction of a criminal action against a principal in the commission of a public offense, when such principal is not present at the commission of the principal offense, is in the same county it would be under this code if he were so present and aiding and abetting therein."

An attempt to commit a crime is sufficiently established when (1) the intent to commit it is shown and (2) a direct ineffectual act toward its commission is performed. (7 Cal.Jur. 875, § 31.) Any person may be convicted of an attempt to commit a crime, although it may appear at the trial that the crime was actually completed. (Pen. Code, § 663.) In the case of *People* v. *Grubb, supra,* the defendant was charged with pandering, and he was convicted of an attempt to commit that crime. Both the defendant and the prosecutrix were living in Los Angeles. Learning that she was desirous of going to San Francisco, the defendant persuaded her to become an inmate of a house of prostitution in the last mentioned city. He wrote a letter to the matron of the house, who agreed to receive the woman in that house. The defendant directed the prosecutrix to that house and assisted her in her journey from Los Angeles. When she arrived at San Francisco she was met by the matron and taken to her house of prostitution, where she was assigned a room. But the prosecutrix refused to engage in prostitution and left the place the following day. The defendant did not go to San Francisco and he performed no overt act in that city. The defendant was tried and convicted in San Francisco County of an attempt to commit pandering. On appeal that judgment was affirmed. The Supreme Court denied a hearing. The court said:

". . . In the present case, the acts of the defendant would have resulted in the commission of the offense with which he was charged but for the refusal of the prosecuting witness above indicated, and this refusal we hold to be the extraneous circumstances which prevented the completion of the crime.

"The interviews between the defendant and the prosecuting witness and some of the assistance rendered by him to her, which constituted the attempt to commit the crime charged, took place in the county of Los Angeles; and for that reason the defendant claims that the superior court of the city and county of San Francisco, where the case was tried, had no jurisdiction. The crime, as we have already seen, comprised a series of acts committed, some in Los Angeles, and some in San Francisco, under such circumstances *the superior court of either of said counties had jurisdiction.* (Pen. Code, § 781.)" (Italics added.)

The appellant in this case challenges the correctness of the foregoing decision. But the principle decided in that case has been approved in several subsequent cases. In the case of *People* v. *Mandell,* 35 Cal.App.2d 368 [95 P.2d 704], under somewhat similar circumstances two defendants were tried and convicted in Sacramento County for procuring a female by means of fraudulent representations to submit to prostitution, contrary to the provisions of section 266a of the Penal Code. The false inducements were made in Kern County. On appeal, the judgment was affirmed. The Supreme Court denied a hearing. In the decision of that court, the Grubb case was cited with approval. The court said:

"When a female person is taken for prostitution purpose by means of false inducement from one county into another where the purpose is consummated, either of those counties has jurisdiction of the offense. [Citing authorities.]"

In the present case the attempt to procure Nina Ezelle to become an inmate of a house of prostitution originated between the appellant and her codefendants in Sacramento County. Overt acts in furtherance of that plan were performed by some of the parties in both Sacramento and Amador Counties. One of the codefendants, Benenato, who took the girl to Jackson, was present in appellant's house at Jackson, when she and the girl discussed the proposal for Nina to become an inmate of that house. The plan was not consummated for the sole reason that Nina was found, on examination, to be afflicted with a venereal disease. We may assume the

plan was frustrated on that ground alone. The defendants were nevertheless guilty of attempting to procure her as an inmate of the house. They are guilty of an attempt to commit pandering, under such circumstances. The motion for a new trial upon the second count of the indictment was therefore erroneously granted.

When a defendant has been convicted upon two counts of an indictment for different offenses necessarily including the same elements, and based on the same acts or omissions, he may not ordinarily be sentenced on both counts. (24 C.J.S. 1214, § 1990.) The same acts may, however, violate different statutes and thus constitute different offenses punishable under separate statutes. If one offense requires proof of an element different from the other, they may not be deemed to constitute the same offense so as to preclude punishment for each. This is true although both offenses are founded chiefly on the same facts. (*People* v. *Coltrin,* 5 Cal.2d 649, 660 [55 P.2d 1161]; *People* v. *Trantham,* 24 Cal.App.2d 177 [74 P.2d 851]; *People* v. *Mazzola,* 99 Cal.App. 682 [279 P. 211]; *In re Crawford,* 109 Cal.App. 33 [292 P. 520].) But it has been held that where the sentences may rest on either count and they run concurrently, the objection of double punishment may not be urged. (*Felio* v. *United States,* 55 F.2d 161; *White* v. *United States,* 16 F.2d 870, certiorari denied, 274 U.S. 745 [47 S.Ct. 660, 71 L.Ed. 1326].) In the present case the attempt to commit pandering does not necessarily involve proof of a previous conspiracy to commit pandering, although the intent to violate the statute is involved in both offenses. We do not think the crimes charged in the first and second counts of the indictment are so similar that conviction upon one of them may become the basis of a plea of former jeopardy as to the other count, although the evidence in support of both charges is largely the same. The defense of former jeopardy must be pleaded. There was no such plea in this case. The charge of double punishment for two crimes founded on substantially the same evidence in most respects, may be avoided by pronouncing sentences to run concurrently.

The judgment and the order denying a new trial on the first count for conspiracy to commit pandering are affirmed. The order granting appellant a new trial on the second count for an attempt to commit pandering is reversed, and the court is directed to render judgment thereon in accordance with the

verdict, the sentence to run concurrently with the sentence imposed by the judgment on the first count.

Peek, J., and Adams, P. J., concurred.