[Crim. No. 909. Fourth Dist. Dec. 14, 1951.]

THE PEOPLE, Respondent, v. LLOYD RAYMOND SCOTT, Appellant.

Lloyd S. Verry and Warren J. Ferguson for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was convicted of the crime of receiving stolen property, and he appeals from the judgment and from an order denying his motion for a new trial.

On the evening of February 7, 1951, two teenage boys broke into a building in Anaheim and stole a motor and a chest of tools. They placed this property in the garage at the home of one of the boys and the next night moved it into the defendant's garage, which was across the alley.

On the evening of February 9, the boys informed the defendant that they had stolen these articles and had placed them in his garage. The defendant testified that he was angry, "but I had to get rid of it." He took the chest and tools out to an orange orchard and hid them. The next morning, February 10, he and the boys took the motor to Los Angeles, where the defendant tried to sell it at three or four places. Being dissatisfied with the price offered for the motor, they returned to Anaheim and went to Booth's service station where the defendant either sold the motor for $50, or borrowed $50 and left the motor as security. The defendant signed a paper reading "2-10-51, Booth Service, Lawson Motor, 50 dollars."

The boys testified as to some of the above facts, and testified that the defendant told them that he had sold the motor, and gave one of them $10 and the other $15. A deputy sheriff testified that he talked with the defendant on February 15; that the defendant first denied knowing anything about the motor; and that when he showed the defendant this "receipt" signed by him he said he had taken the motor to that service station and sold it for $50, that the money was divided between the three of them, that he knew the stuff was in his garage and knew it had been stolen, and that he "hauled it out and disposed of it and divided the money." The officer further testified that the defendant said nothing about borrowing $50 or leaving the motor for security; that the defendant told him that he had taken the tool chest out and hidden it; and that the defendant took him out to where it was hidden, where it was found.

The defendant testified that the boys told him on the night of February 9 that the stuff was in his garage; that he was angry and that he had to get rid of it; that he took the chest of tools out that night and hid it; that the next morning he and the boys took the motor to Los Angeles and went to several places trying to sell it; that "I didn't care whether I sold it, borrowed money on it or what"; that they went back to Anaheim; that he left the motor at the service station and gave the boys all he got out of it; that he told the boys he would borrow some money on the motor and they were to pay the money back; that the boys told him on Friday night they were expecting a detective over there; that he told one of the boys to "get rid of it"; and that this boy's mother had refused to let the boys use her car any more "so I put the stuff in my car and disposed of it.

There is your story in flatfoot.'' There was also evidence that over a considerable period prior to February 7, the defendant had told these boys that if they found anything to steal, which was profitable, he thought he could help them in disposing of it.

█ It is contended that the evidence is insufficient to support the verdict. It is argued that the defendant did not know that these articles were in his garage when they were first placed there; that without knowledge of their presence he could not have received the goods, or have intended to exercise dominion and control over them; and that any acts which occurred subsequent to the placing of the goods in his garage, without his knowledge, cannot be considered in determining whether or not he received them.

This contention is without merit. The fact that the defendant did not know that this stolen property had been placed in his garage until a day later is immaterial. After being told the facts, he took possession of and assumed control over the property, and proceeded to dispose of it. He hid the tool chest and tools (which was also a violation of Pen. Code, § 496bb), and he disposed of the motor, either by selling it or by using it as security for a loan. There is ample evidence that he sold the motor, but it is immaterial which of these methods of exercising control he employed. The evidence conclusively shows that the defendant received this property knowing the same to have been stolen, within the meaning of section 496 of the Penal Code.

█ It is further contended that the court erred in failing to give two instructions which were refused as covered. The first of these reads, in part, as follows: ''You are instructed that the crime of receiving stolen goods consists of either buying or receiving personal property with knowledge that it has been stolen. The gist of the offense is the purchase or receipt of the stolen goods with guilty knowledge.'' The second reads in part: ''You are instructed that the word 'receive' in its commonly accepted meaning carries with it the concept that something has been physically delivered, or placed in the hands of the recipient.'' Each of these instructions also told the jury that if it found from the evidence that the defendant did not receive any personal property, with knowledge that it had been stolen, he must be found not guilty on that charge.

█ The second of these instructions was defective in that it omitted the element of constructive possession. (*People* v.

*Rossi,* 15 Cal.App.2d 180 [59 P.2d 206].) Insofar as they were correct the substance of both instructions was sufficiently covered in the instructions given. Among other things, the court gave the following instructions:

"Every person who receives any property which has been stolen, knowing the same to be so stolen, is guilty of a felony."

"Whether a defendant had knowledge that property received by him was stolen when he received it may be determined from all of the facts in evidence and reasonable inferences that may be drawn from such facts."

"It is not a necessary element of the offense charged in Count One of the Information that the person charged with receiving stolen property has purchased the stolen property or paid anything to the thief for it; the offense is complete when a person receives stolen property into his possession or control, knowing it to have been stolen."

"Within the meaning of the law, a person has received property into his possession when it is under his dominion and control and either is carried on his person or is in his presence or custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him; provided, however, that two or more persons may have joint possession of property if jointly they have the dominion, control and exclusive possession I have described."

The instructions given covered all the essential elements, and no error appears in this connection.

The judgment and order are affirmed.

Griffin, J., and Mussell, J., concurred.