[Crim. No. 5672.   Second Dist., Div. Three.   Mar. 19, 1957.]

THE PEOPLE, Respondent, v. PHYNUS REYNOLDS et al., Defendants; JOSEPH NICHOLS, Appellant.

Joseph Nichols, in pro. per., and Edwin J. Wilson for Appellant.

Edmund G. Brown, Attorney General, and James L. Mamakos, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant Nichols and one Reynolds were charged in Count I of an information with burglary, and in Count II with unlawfully receiving stolen property. Trial was by jury. Nichols was found not guilty on Count I, and guilty on Count II. Reynolds was found guilty on Count I. Count II was dismissed as to Reynolds. Proceedings were suspended and probation was granted to both defendants. Nichols appeals from the order granting probation.

Appellant contends that the evidence was insufficient to support the verdict.

During the night of December 16, 1955, burglary was committed at the office of Mr. Cotter (a used car dealer in Long Beach) and an adding machine, serial Number 557796, was stolen from the office. Defendant Reynolds was convicted of committing that burglary.

Officer Parris testified that on December 22, 1955, he saw an adding machine in Nichols' café, and upon checking the serial number of it with the serial number of the stolen adding machine he found that the numbers were the same; defendant was not present at that time but his sister was there; the officer took the machine, a drill, and checkwriter from the café; the next morning the officer saw defendant on a lot next to the café; the officer asked him about the adding machine which the officer had taken from the café; defendant said that he bought it for $15 from a key man at 2121 Orange Avenue a week or two or a month previously; the officer asked him to go with the officer to the key man; defendant said that he could not go because he had to work; the officer arrested him and while they were in the police car on the way to the key shop

defendant said it might be that he bought the machine a month and a half or two months previously, and he was not sure that he bought it from the key man; when they were at the key shop the officer asked the man if he had sold an adding machine to defendant; the man replied that he had not sold an adding machine but had sold a checkwriter to him three or four days previously; on the way from the key shop to the police station defendant said he did not know where he obtained the adding machine—that he bought lots of things from different persons and he knew some of the persons and he did not know the others; he also said that he was in the contracting business but he buys and sells articles if he thinks he can make money on the resale; he also said he did not remember paying $15 for the adding machine; on December 27, in a conversation at the police station, defendant said that he made the deal to buy the machine for $30 in the Royal Palm Café but he was not sure as to the name of the fellow; he paid the man $10 in cash and gave $20 to another person who took it to the man later that day; during the conversation at the station defendant Reynolds, who was in jail, was brought into the presence of the officer and defendant Nichols, and the officer asked Nichols if Reynolds was the man from whom he bought the adding machine; Nichols replied that he looked like the man but he (Nichols) was not positive; the officer asked Reynolds if Nichols was the man to whom he sold the machine, and Reynolds replied that he was the man.

Mr. Cotter, the owner of the adding machine, testified that he paid $300 for the machine about three years ago when it was practically new; he bought it from the Nevada Car Company; in his opinion the value of the machine (when stolen) was $200; his estimate as to value was based upon the prices of similar machines, which prices were from $300 to $350.

Mrs. Diamond, called as a witness by defendants, testified that she was office manager of the Long Beach Branch of Remington-Rand; the records of her office show that an adding machine, bearing the serial number of Exhibit 1 (machine here involved), was first sold in 1948 to the Nevada Car Company.

Mr. Honeyman, called as a witness by defendants, testified that he was a real estate broker and was also in the vending business (apparently placing vending machines in restaurants); about December 18, 1955, while he was sitting in a booth in the Royal Palm Café he saw an adding machine

which was similar to Exhibit 1; the machine was offered for sale for $60; at that time 10 or 12 persons were present; thereafter defendant Nichols entered the café and sat in the booth with the witness (Honeyman), and they discussed business; defendant Reynolds approached the booth and asked defendant Nichols if he was interested in buying the adding machine for $60; Nichols asked the witness what he thought the value was; the witness replied that it was worth $40; Nichols offered $30 for it; the witness and Nichols continued to talk about their business affairs; then Nichols left the café.

The testimony of defendant Nichols was in substance as follows: He owns three cafés, and he has a contractor's license for cement work. On December 18, 1955, as he was going into the Royal Palm Café (not owned by him) he met a little short fellow at the door who said he had a machine for sale. While Nichols and Honeyman were at a table in the café a "tall bright [lighter colored] fellow" came to them and said that he had a machine for sale. Nichols knew that man "by sight," but he did not know his name at that time. The man so referred to was defendant Reynolds but the first time Nichols knew his name was later, when they were at the police station. Nichols asked Honeyman what the machine was worth. Honeyman replied that it was worth about $40. Nichols said he would give $30 for it. Reynolds said "O. K." Nichols said he had only $10 with him and he would have to get a check cashed. Reynolds asked Nichols to go to his room and see the machine. While they were in Reynolds' room, Nichols paid $10 and asked Reynolds to put the adding machine in Nichols' car. The "little short fellow" (whom Nichols had seen at the door of the café) was also in the room. Reynolds told Nichols that the short fellow would go home with Nichols and that Nichols, after cashing a check, should give $20 to the man. Nichols took the machine to one of his cafés and gave $20 to the man. The first time he (Nichols) heard that the machine was stolen was the morning that Officer Parris came to him on the vacant lot (about December 23) and asked him what he was doing "with all that stolen stuff" in his café. Nichols asked: "What stolen stuff?" When the officer said that he was going to take him to jail, Nichols said that he might show where he got "the stuff." Then Nichols and the officer went to the key shop. The officer asked the key man if he sold an adding machine to Nichols. The man replied, "No." Prior to that time the officer had not said

anything to Nichols about an adding machine. The key man said that he had sold a checkwriter to Nichols. After leaving the key shop, and while they were in the police car, Nichols said he bought the drill from a carpenter and he bought the adding machine from a "tall bright fellow" at the Royal Palm Café. The officer asked him if that fellow was Reynolds. Nichols replied that he did not know. The first time Nichols saw the adding machine after the officer took it out of the café was when it was in court. Nichols did not go to the key man for the purpose of explaining his possession of the adding machine. He did not tell the officer that he did not remember or know where he bought the machine. He did not know the name of the "little short fellow" at the time the fellow was at the café door, but at the time of trial he knew that his name was Love. On cross-examination, the deputy district attorney asked: "You heard that Mr. Love was shot dead last night, didn't you?" Nichols answered "Yes, sir, I did."

Officer Boardman testified, on rebuttal, that on December 22 Nichols asked him where the adding machine and drill were; the officer (witness) asked: "Are they stolen?"; Nichols replied, "No, I bought them from a key man on Orange Avenue."

Nichols testified further that he did not tell Officer Boardman that he bought the adding machine from a key man.

Appellant contends, as above stated, that the evidence was insufficient to support the verdict. Section 496 of the Penal Code provides: "Every person who buys or receives any property which has been stolen . . . knowing the same to be so stolen . . . is punishable by imprisonment in a state prison . . . ." It is conceded that the evidence was sufficient to establish that the adding machine was stolen. The question, under the contention herein, is whether the evidence was sufficient to prove that defendant had knowledge that the machine was stolen. ▪ "[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen." (*People* v. *Lopez*, 126 Cal.App.2d 274, 278 [271 P.2d 874].) ▪ False or evasive answers to material questions with reference to the ownership of stolen property tend to prove such knowledge. (*People* v. *Boyden*, 116 Cal.App.2d 278, 288 [253 P.2d 773]; *People* v. *Malouf*,

135 Cal.App.2d 697, 707-708 [287 P.2d 834].)  ██  "A sale of property at a price which is disproportionately low in comparison with the value of the property may be a suspicious circumstance." (*People* v. *Malouf, supra,* 706.)

██ In the present case, the adding machine was found in defendant's possession about six days after it was stolen. Viewing the evidence in the light favorable to the prosecution, the defendant gave false and evasive answers to Officer Parris regarding the purchase of the machine. Some of his false and evasive statements were that he bought it from the key man; that he paid $15 for it; that he did not know where he obtained it; and that he might have bought it a month and a half or two months previously. Also, it could have been inferred from the evidence that the price of $30 which he paid was disproportionately low in comparison with the value of the machine. There was testimony by the owner that the value of the machine was $200; that he paid $300 for it about three years previously when the machine was practically new. Defendant's statement to the officer as to the identity of the man, in the café, who sold the machine was evasive and was a suspicious circumstance. He described the man as a "tall bright fellow" when the fact was (according to defendant's testimony) he knew the man by sight, had seen him "a lot of times," and knew that the man had been the manager of the Brown Jug Café in 1944, and while the man was such manager defendant had bought chickens and other things from him at that café. In view of the false and evasive statements of defendant, and in view of the other suspicious circumstances including the low price paid, the jury could reasonably find that defendant knew that the adding machine was stolen. The evidence was sufficient to support the verdict.

██ Appellant asserts further that a "review of the testimony suggests that the jury's verdict may have been influenced by prejudice. An instance where misconduct by the district attorney appears to have occurred is when he questioned appellant about a Mr. Love, who was the intermediary between defendant Reynolds and appellant." The question so referred to was asked, on cross-examination, and was as follows: "You heard that Mr. Love was shot dead last night, didn't you?" The answer was: "Yes, sir, I did." Appellant argues that the question was improper and had no purpose other than to prejudice the jury against him; and that there was an implication in the question that appellant associated

with persons of criminal character. All the circumstances under which the question was asked are to be considered. The question was the first question which was asked on cross-examination by the deputy district attorney. Just prior thereto, counsel for defendant Reynolds had asked defendant Nichols if he knew the name of the "short man," and if that man was the one who first mentioned the adding machine. Nichols had replied that the man's name was Love, and the man had said that he had "a machine." It is reasonable to assume that the reference which had just been made to Love, who was the intermediary, raised a question in the minds of the jurors as to the availability of Love as a witness, either for the prosecution or defense. The circumstances, created by Nichols on direct examination, justified the deputy district attorney in asking a question on cross-examination for the purpose of showing that Love was not available as a witness. Of course, the nonavailability of Love as a witness could have been shown without using the words "shot dead," and by merely inquiring whether Love was dead. Under the circumstances, however, it does not appear that the deputy district attorney was guilty of misconduct in asking the question.

The order appealed from is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1957.