[Crim. No. 7382. Second Dist., Div. Two. Apr. 18, 1961.]

THE PEOPLE, Respondent, v. DONALD LEVI WARFORD et al., Defendants; HAROLD GENE FAGAN, Appellant.

Harold Gene Fagan, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and John F. Foran, Deputy Attorneys General, for Respondent.

FOX, P. J.—In count I of an information appellant and Donald Levi Warford were charged with the crime of burglary (Pen. Code, § 459) in that on or about February 21, 1960, they willfully entered the store occupied by Lloyd E. Elliott with intent to commit theft. In count II they were charged with receiving stolen property (Pen. Code, § 496) in that on or about February 24, 1960, appellant and said Warford unlawfully received certain designated personal property knowing that the said property had been stolen. Both defendants denied each of the charges. After a trial by the court without a jury both defendants were found not guilty of burglary and both were found guilty of receiving stolen property. Appellant Fagan was sentenced to the state prison for the term prescribed by law. He has appealed from the judgment.

On the night of February 21, 1960, the Coast Television Engineers' TV shop, located at 5212 Laurel Canyon, Los Angeles County, was burglarized. Two TV sets, one oscilloscope, one RCA voltmeter, and two tube caddies were taken from the shop. One TV set was a new Packard-Bell portable with a 17-inch screen; the other was an RCA portable, blue and white in color, with a remote control unit. One of the TV sets was valued at $185 and the other at $225.

Some time around the 22d of February the appellant Fagan telephoned James Ellard, who owned a radio and TV shop in Hollywood and whom appellant had known for some time, and inquired whether he knew of anyone who wanted to buy a TV set. Ellard replied in the negative. The next day appellant again called Ellard and further inquired whether he had located anyone interested in buying a TV set. By this time

Ellard had been in touch with one Alvin Onstad who had informed Ellard that he wanted to buy a TV set to replace one that had been stolen from him, and requested Ellard to give appellant his (Onstad's) telephone number when he called back. Either appellant or Warford contacted Onstad at his home on February 25th. Later that day appellant and defendant Warford arrived at the Onstad home, 10927 Barman Avenue, Culver City, and brought two TV sets, one a Packard-Bell 17-inch screen, and the other an RCA 17-inch screen with remote control. Onstad asked the prices of the two sets. They quoted him a price of $100 or $50 each. Onstad thereupon paid them $100 in cash.

On February 25th Officer Gerald Cohen of the Los Angeles Police Department, Burglary Detail, received information that appellant and defendant Warford had committed a burglary in the North Hollywood area and were in possession of stolen property taken in the burglary. This information was to the effect that the appellant and defendant Warford on the previous night had taken two tube caddies to 706 North El Centro Street and placed them in a closet there. Officer Cohen thereupon went to this address and upon entering the premises he was directed to a closet by an occupant of the apartment where he found two tube caddies, one of which was received in evidence. It was identified by the proprietor of the Coast Television Shop as one of the two missing after the burglary. The tube caddy was identified by its contents, specifically a Tung Sol flashlight, which was positively identified by Mr. Elliott, the owner of the burglarized shop.

Upon recovering the two tube caddies, the police placed them in their car and proceeded to 1600 North Alexandria, parking in such a position that they were able to observe the entrance to the house. At approximately 7:30 p. m. appellant and defendant Warford drove up and parked directly in front of that number, got out, and started walking to the house at the above address. At this point the officers arrested appellant and Warford. They then proceeded to the house, which Warford opened with his key. Appellant Fagan gave the police officers permission to search the premises, but nothing pertaining to this case was discovered.

While at this house, Officer Cohen had a conversation with appellant in which the officer told appellant that he and his partner had the two tube caddies in their possession, and that they had sufficient evidence to show that appellant and Warford had taken them to 706 North El Centro and placed them

in a closet, and had told the occupant that the caddies were "hot." Appellant denied knowing anything about the tube caddies. Cohen stated that the matter was going to require a more satisfactory explanation. Appellant thereupon told Cohen the following story: "Man, I'm in a tight spot. I am a five-time loser. Let's just say that I had worked at Coast Television, and that I knew some guys that needed some cash, and that I knew the layout of the place, and the fact that it wasn't wired. And since I furnished them with this information, I felt that I was entitled to something, and that's why I asked them to pick up the tube caddies. And this is the reason why that I had them in my possession. I am not going to identify these people for you. I know that I am as guilty as they, since I planned the burglary and shared in the loot."

Later that day Officer Cohen had a further conversation with appellant at the police station. After implicating defendant Warford in the actual burglary, appellant stated that "he knew that he was guilty of receiving stolen property. . . ." He further stated that he had taken the oscilloscope to his present place of employment, a shop located in Westwood Village, and that he was presently using it. He also admitted taking the two tube caddies to 706 North El Centro Street.

On February 26th, Officer Cohen had a third conversation with appellant. The officer told appellant that it was necessary, for the proper disposition of this case, that all property be recovered. Appellant then stated that he and Warford, on the night following the burglary, took both TV sets to a private residence on Barman Street in Culver City and sold each set for $50. He also stated that the voltmeter had been taken to 706 North El Centro at the same time the tube caddies were taken there.

All of these conversations were free and voluntary. With the exception of the initial conversation between appellant and Officer Cohen, the conversations were tape recorded. The recordings were played at the trial.

Appellant testified in his own behalf. He stated that he was living with defendant Warford at 1600 North Alexandria. He denied committing the burglary. He told a story to the effect that he had accompanied Warford, who had been employed by Ellard, to deliver the two TV sets to one Onstad. He further stated that he first saw the tube caddies, the oscilloscope, and voltmeter at his home on Wednesday, February 24th; that Warford told him that Ellard had sent this TV equipment over to him to see whether he was interested in

buying it, since appellant had told Ellard he was interested in setting up a TV shop. Appellant stated that the equipment was worth approximately $1,000 and he could not afford it; he further stated that he and Warford dropped the tube caddies and voltmeter at Irene Barkley's apartment at 706 North El Centro. Appellant admitted that he had the oscilloscope in his possession when he was questioned by the police. He claimed, however, that he was repairing it because of damage caused by Warford's having dropped it.

James Ellard testified that he had never known Warford but that he had known appellant for a couple of years. He further testified that appellant had never mentioned going into the TV business.

Appellant has not challenged the sufficiency of the evidence to sustain the conviction. In seeking a reversal he attempts to make two points: (1) "The judgment of conviction is void upon the face of the record, and illegally entered"; and (2) his arrest was unlawful, and the evidence was unlawfully seized without probable cause or a warrant. There is no merit in either of these contentions.

In support of his first contention, appellant seems to argue that count II of the information, which charges receiving stolen property, does not state sufficient facts to show a public offense. He also argues that the pleading is ambiguous. He concedes that he was properly held to answer by the committing magistrate for "violation of section 496 of the Penal Code of the State of California, a felony, as set forth in Count II. . . ." He then says that this was an ambiguous finding which is dependent upon a reading of count II of the complaint before its meaning can be ascertained; that this count merely alleges the offense in the language of section 496, and that this is not sufficient to show a violation of the statute. He appears to make the same argument with respect to the information. In his reply brief appellant "asserts that while Count II of the information follows the language of section 496, the same fails to state facts sufficient to constitute a violation of such statute." ■■ Since the information charged the offense substantially in the language of the statute, it is sufficient. (*People* v. *Pounds*, 168 Cal.App.2d 756, 759 [336 P.2d 219]; *People* v. *Ruiz*, 103 Cal.App.2d 146, 148 [229 P.2d 73]; Pen. Code, § 952.) We have also examined count II of the information and find that it adequately and clearly alleges facts showing a violation of section 496, Penal Code. ■■ Furthermore, appellant waived any

claim of uncertainty by failing to demur to the information. (*People* v. *Brac*, 73 Cal.App.2d 629, 635 [167 P.2d 535]; *People* v. *Benenato*, 77 Cal.App.2d 350, 363 [175 P.2d 296].)

 Appellant misconceives his position in arguing that his arrest was unlawful, and that the search and seizure of the various items of personal property were therefore illegal. The evidence introduced against him was neither the product of a search of his person nor of his premises. One of the TV sets was recovered from the purchaser, Onstad, and the other from a person to whom Onstad had sold it. Recovery of these sets was accomplished by reason of information voluntarily given the police by appellant. The tube caddies were recovered from an address other than that at which appellant lived. Appellant told the police that the voltmeter had been taken to the same address at which the tube caddies had been delivered. The oscilloscope was picked up by appellant's mother at a TV shop in Westwood Village, where appellant was employed at the time of his arrest. It is thus apparent that none of the stolen items were recovered as a result of a search incident to appellant's arrest. With the exception of the tube caddies, the other items were recovered by reason of information voluntarily furnished by appellant. Since he voluntarily furnished this information, he cannot claim that his constitutional rights were violated. *People* v. *Hicks*, 165 Cal.App.2d 548 [331 P.2d 1003], is here apposite. In that case counsel objected to the introduction in evidence of certain statements made by the defendant on the ground that the statements were made while he was detained under unlawful arrest. The court held (p. 550) that, "Assuming the arrest unlawful, the statements, if voluntary, were admissible." The reasoning underlying this rule is found in *Rogers* v. *Superior Court*, 46 Cal.2d 3, at pages 10 and 11 [291 P.2d 929]. There the court pointed out, among other things, that a voluntary admission is not a necessary product of an illegal detention. Since there was no evidence that the illegal detention produced the admissions, the court found "the exclusionary rule inapplicable." In the instant case, the testimony shows that appellant's admissions were freely and voluntarily made, and he makes no contention to the contrary. It therefore follows that there is no issue of illegal search and seizure in this case.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.