[Crim. No. 27. Fifth Dist. June 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. R. C. BUGG, Defendant and Appellant.

J. M. Lopes for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Barry L. Bunshoft, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, R. C. Bugg, appeals from a judgment of conviction and denial of his motion for new trial. He was charged in the amended information with re-

814

ceiving stolen property, a violation of section 496 of the Penal Code, in that he, ". . . on or about the 12th day of January, A.D. 1959, . . . did willfully, unlawfully and feloniously receive certain property, which said property had been stolen, knowing that said property had been stolen, and did conceal and withhold and aid in concealing and withholding said property from the owner, knowing that said property had been stolen." After conviction by a jury, he made a motion for a new trial, which was denied. The trial court granted probation; the imposition of sentence was suspended for two years, and as a condition of probation the appellant was committed to the custody of the Sheriff of Tulare County for a period of one year. The appellant was released on $1,000 bail pending his appeal.

The appellant contends: (1) that the amended information does not state facts sufficient to constitute a public offense; (2) that the evidence is not sufficient to sustain the verdict; (3) that the testimony of the alleged accomplices was not adequately corroborated; and (4) that the court erred in admitting testimony as to defendant's general reputation for veracity after he had testified as a witness.

An appeal may be taken from an order granting probation as a final judgment (Pen. Code, § 1237, subd. 1).

The amended information complied with the law of California in charging the crime of receiving stolen property. The information alleged the offense substantially in the language of the statute and it therefore was sufficient. (*People* v. *Warford,* 191 Cal.App.2d 346, 350 [12 Cal.Rptr. 565]; *People* v. *Pounds,* 168 Cal.App.2d 756, 759 [336 P.2d 219]: *People* v. *Ruiz,* 103 Cal.App.2d 146, 148 [229 P.2d 73]; Pen. Code, § 952.) It should be noted further that the appellant waived any claim of uncertainty by failing to demur to the amended information. (*People* v. *Warford, supra*; *People* v. *Brac,* 73 Cal.App.2d 629, 635 [167 P.2d 535]; *People* v. *Benenato,* 77 Cal.App.2d 350, 363 [175 P.2d 296].)

Passing for the moment the question of whether or not the testimony of the accomplices was sufficiently corroborated, the record amply supports the conviction. The witnesses Benevedes and Enos testified that in January 1959 the defendant, at the Peacock Café in Tulare, joined with them in planning the theft of a truck in Los Angeles; he offered them $500 for the delivery to him of a 275 or 300 charger truck diesel engine with a blower, and also agreed to pay them $50 for expenses. Pursuant to the conspiracy, on January 11, 1959, Benevedes

and Enos stole a Kenworth truck with a 300 engine, which they found parked near Alameda and Bay Streets in Los Angeles. They drove the vehicle to Tulare and left it in the Torres garage, which was then being leased from its owners by the defendant. Benevedes and Enos dismantled the truck and disposed of certain parts by throwing them into the deep water of nearby rivers; the defendant, who was then in Canada, instructed them by telephone to remove the engine from the truck and to leave it at defendant's house in Tulare County, using his Studebaker flatbed truck for the purpose. Finding that the engine was too heavy for them to lift, the thieves were permitted by the defendant to take the engine apart before moving it. They delivered two Timken rear ends to the defendant's residence and left them in his yard.

It was stipulated in open court that this Kenworth truck was in fact stolen in the area of Alameda and Bay Streets in Los Angeles on January 11, 1959, that it bore as its engine number 55848, and that about March 1, 1959, the block from the stolen engine was installed in defendant's Mack truck at Valley Truck Repair in Fresno pursuant to the defendant's express direction.

Around December 1960, the block was taken out of the Mack truck; the engine was stripped down at Frank Sousa's Automotive, and the block was removed to Triangle Produce Depot and from there to defendant's house. Benevedes testified that the block, the blower and the crankshaft were taken to defendant's house at the same time and that the crankshaft number was not then obliterated or defaced. He said that the block and crankshaft were left on the northeast side of Bugg's house, and the blower was put inside a shop on his premises.

Two years after the theft Lieutenant McGowan, of the Tulare Police Department, drove by the defendant's yard and noted that two of his employees, Hickman and Hiser, were beating upon a diesel block with a sledge hammer and that they were using a torch in connection with their operations. Lieutenant McGowan told them to cease their activities, and he left the premises, but returned later in the day with an investigator from the district attorney's office and a deputy sheriff. At that time they recorded the number which appeared on the brass plate on the gear case of the engine block. They also observed a crankshaft near the block but failed to obtain the number on it. They talked with the defendant's wife, and she told them that they should consult with her husband. On the evening of March 20 defendant returned home

and telephoned Lieutenant McGowan to ask why he had been at his house. The lieutenant told him what he had seen and that he would call on him the next day.

When the officers, accompanied by a representative of the National Auto Theft Bureau and of the State Department of Motor Vehicles, arrived at defendant's house, they discovered that the brass plate containing the number on the gear case had been removed, and that the crankshaft was missing. The defendant then told them that these things had been effected by people who were "more interested in it than he was." Defendant took them to the garage where he showed them a blower that he said "could have been off the stolen engine." He told officers that the engine had come out of his Mack truck in Fresno several years before the theft and said in response to their questions for a more complete explanation, "That's a long story. I hope I never have to tell it, but before I do I want to talk to my lawyer."

Obviously, the jury had ample evidence upon which to base a verdict of guilty. They were not bound to accept the testimony of defendant, who sought to account otherwise for the presence of the property on his home place.

The appellant, while admitting that the truck parts were stolen, contends that there was insufficient evidence on which to base an implied finding that he received the property or that he knew it was stolen.

"Physical possession of the property in the accused is not necessary to constitute receipt of stolen goods if they were concealed on his premises by others with his knowledge or consent . . ." (*People* v. *Candiotto,* 183 Cal.App.2d 348, 349-350 [6 Cal.Rptr. 876].) See also *People* v. *Rossi,* 15 Cal.App.2d 180, 182 [59 P.2d 206]; *People* v. *Scott,* 108 Cal.App.2d 231, 233 [238 P.2d 659].)

There is evidence in the record from which the jury could legitimately find that the appellant had physical possession of the stolen goods and that they were concealed on his premises. The stolen engine was installed in the defendant's truck; the Timken rear ends were thereafter sold by defendant to a person in Los Angeles; the block from the stolen truck was placed in his yard after it was removed from his truck and remained there for several months; the engine number was obliterated under the circumstances above outlined; the blower from the stolen truck was found in defendant's garage.

As to defendant's knowledge: "Although guilty knowledge of the fact that the property was stolen is an

essential fact to be proved in a prosecution for receiving stolen property, such knowledge need not be that actual and positive knowledge which is acquired from personal observation of the fact." (*People* v. *Boinus*, 153 Cal.App.2d 618, 621 [314 P.2d 787].) See also *People* v. *Lodge*, 190 Cal.App. 2d 865, 871, 872 [12 Cal.Rptr. 352].)

■ Guilty knowledge "may be circumstantial and deductive." (*People* v. *Bycel*, 133 Cal.App.2d 596, 599 [284 P.2d 927]; *People* v. *Hartridge*, 134 Cal.App.2d 659, 665 [286 P.2d 72].) Such knowledge may be "inferred circumstantially." (*People* v. *Candiotto*, *supra*, 183 Cal.App.2d 348, 350.)

■ "Possession of stolen property, accompanied by suspicious circumstances, will justify an inference that the property was received with knowledge that it had been stolen. [Citation.]" (*People* v. *Malouf*, 135 Cal.App.2d 697, 706 [287 P.2d 834].) (See also *People* v. *Kot*, 171 Cal.App.2d 9, 12 [339 P.2d 899].)

The evidence that the engine number was obliterated under the circumstances outlined above and that the crankshaft was removed while in possession of the defendant certainly constituted "suspicious circumstances." ■ A defendant's ". . . admissions and contradictory statements coupled with his possession of the stolen property alone are sufficient to support a finding of guilt." (*People* v. *Kefry*, 166 Cal.App. 2d 179, 190 [332 P.2d 848].) The appellant admitted to police officers that he knew the blower in his garage could have been part of the stolen engine.

■ " 'False or evasive answers to material questions with reference to the ownership of stolen property tend to prove such knowledge.' (*People* v. *Reynolds* (1957) 149 Cal.App. 2d 290, 294 [2] [308 P.2d 48]; . . ." (*People* v. *Lyons*, 50 Cal.2d 245, 258 [324 P.2d 556].)

Considering all of the evidence, guilty knowledge could legitimately be found by the jury.

■ While Benevedes and Enos did not meet the exact statutory definition of accomplices (Pen. Code, § 1111) in that they were not liable to prosecution for the identical offense, it has been established in this state that when there has been a conspiracy between the thieves and the receiver of the stolen property to effect a theft and to receive the stolen property, the thieves are accomplices. (*People* v. *Lima*, 25 Cal.2d 573, 578 [154 P.2d 698].) ■ We hold that the testimony of the accomplices was sufficiently corroborated.

The evidence need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense . . ." (*People* v. *Lyons, supra,* 50 Cal.2d 245, 257.) (See also *People* v. *Santo,* 43 Cal.2d 319, 327 [273 P.2d 249].)

The stolen property was found in the possession of the appellant; while the engine block was in his possession the identifying numbers were obliterated to prevent identification; the defendant admittedly had financial dealings with Benevedes; the defendant admitted that he instructed employees to break up the block a short time before that was done; the appellant made certain admissions and gave false and evasive answers, as already noted. (*People* v. *Lyons, supra,* 50 Cal.2d 245, 258; *People* v. *Reynolds,* 149 Cal.App.2d 290, 294-295 [308 P.2d 48]; *People* v. *Santo, supra,* 43 Cal.2d 319, 327.)

The appellant argues that the court committed error by permitting testimony of the witness Hollis as to appellant's bad reputation for veracity. The objection is twofold: first, it is claimed that no such evidence was admissible; and second, that a foundation was not sufficiently laid to show the knowledge of Hollis as to defendant's reputation in the community.

The defendant himself had taken the stand, and it was therefore proper for the district attorney to call Hollis as a witness with respect to the appellant's general reputation for veracity.

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, . . ." (Code Civ. Proc., § 2051.) (*People* v. *Lima,* 127 Cal.App.2d 29, 33 [273 P.2d 268]; *People* v. *Gordon,* 206 Cal. 29 [273 P. 568]; *People* v. *Larrios,* 220 Cal. 236, 247 [30 P.2d 404].)

The question of the qualification of a witness on the subject of reputation is normally a matter for the trial court to determine. Mr. Hollis testified that he had been a business partner of the defendant, had maintained an office in Tulare in 1960 from March to December in conducting a trucking business and that he continued up to the time of the trial to engage in such operations in Tulare; he had also lived for four or five months in a trailer behind his place of business in Tulare. The court was justified in ruling that

he was sufficiently qualified to give his testimony. (*People* v. *Cobb*, 45 Cal.2d 158, 164 [287 P.2d 752]; *People* v. *Cord*, 157 Cal. 562, 572 [108 P. 511]; *People* v. *Workman*, 136 Cal. App.2d 898 [289 P.2d 514].)

The judgment of conviction and the denial of the defendant's motion for a new trial are affirmed.

Brown, J., concurred.

Stone, J., being disqualified, did not participate.

Appellant's petition for a hearing by the Supreme Court was denied August 15, 1962.