257 Cal.App.2d 98 (1967)
THE PEOPLE, Plaintiff and Respondent,
v.
MARSHALL ROY LURIE, Defendant and Appellant.
Crim. No. 12981. 
California Court of Appeals. Second Dist., Div. One. 
Dec. 18, 1967.
 Sherman & Sturman and Richard G. Sherman for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Bechefsky, Deputy Attorney General, for Plaintiff and Respondent.
 LILLIE, J.
 D'Allesandro, Lynn Jenkins and Lurie were found guilty of second degree burglary (Pen. Code, 459) and grand theft ( 487, subd. 1, Pen. Code); the same charges were dismissed as to Jenkins on her motion (Pen. Code, 995). Defendants were sentenced to the state prison on each *100 count, but sentence on the grand theft conviction was stayed pending service of sentence on the burglary, the stay thereafter to become permanent. This appeal involves Lurie only.
 On March 23, 1965, the apartment of Sylvia Elkins was forcibly entered and four furs and two sweaters worth $9,350 were stolen.
 Appellant's main contention is that there was no probable cause for arrest and that the evidence, the result of an illegal search and seizure, was inadmissible. [1] In the absence of a warrant a peace officer may arrest a person whenever he has reasonable cause to believe that the person arrested has committed a felony. (Pen. Code, 836, subd. 3; People v. Torres, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; People v. Fischer, 49 Cal.2d 442, 446 [317 P.2d 967]; People v. Ingle, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; People v. Schader, 62 Cal.2d 716, 722 [44 Cal.Rptr. 193, 401 P.2d 665].) [2] "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty." (People v. Hillery, 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; People v. Cockrell, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; People v. Stewart, 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97]; Jackson v. Superior Court, 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374].) [3] "No exact formula exists for determining reasonable cause, and each case must be decided on the facts and circumstances presented to the officers at the time they were required to act. (People v. Ingle, supra, at p. 412; People v. Ferguson, 214 Cal.App.2d 772, 775 [29 Cal.Rptr. 691].)" (People v. Ross, 67 Cal.2d 64, 69-70 [60 Cal.Rptr. 254, 429 P.2d 606].) With these rules in mind we review the information in the possession of Sergeant Evans at the time the defendants were arrested.
 [4] Sergeant Evans, detective, Los Angeles Police Department, for 13 or 14 years a robbery investigator, had extensive experience with methods of operations of particular criminals as related to particular crimes. On March 27, 1965, he and Sergeant Calvert began an investigation of a half million dollar robbery at I. Magnin Co., in which expensive jewelry was taken. He knew from experience that the robbery had been perpetrated by professionals because of the merchandise selected, they used masks and threw a smoke bomb into the store and the job was well planned; he believed that this kind of robbery, its size and the modus operandi, pointed to a *101 professional job most likely by someone from out of town. Thus, the officers checked local criminal records and those of other law enforcement agencies, and all newcomers to the city which revealed that defendants, from Chicago, had been in Los Angeles for only 11 days. Defendants' records showed that they had been arrested for implication in other robbery situations in Chicago and New York, affiliated with gangs in the east and involved in gang-type activities. D'Allesandro had been arrested in Los Angeles in 1952. An investigating team showed mug shots of defendants to I. Magnin employees who identified them as persons they had seen in the store "just prior to the robbery, casing the store, which was the day before the robbery." The team described defendant's activity as "casing"; and Sergeant Evans knew from the nature of the store robbery that it had been "cased." The foregoing information evaluated in the light of his long experience in cases of this kind led Sergeant Evans to suspect defendants in connection with the I. Magnin robbery; thus on March 29, 1965, on a hunch that defendants would be leaving town, he and his partner went to the Los Angeles International Airport. For four hours they checked flights to the east coast working all of the terminals. Sergeant Evans testified that they were about to give up when around 4:10 p.m., while in the TWA terminal, they observed defendants, whom they recognized from mug shots in their possession, and Miss Jenkins walk to the gate, present tickets to the agent and go toward a plane bound for New York. At that time the officers stepped out, identified themselves, and arrested all three.
 Sergeant Evans informed D'Allesandro of his constitutional rights; the latter stated that he understood them and knew what they were; he said he was going to New York. Asked if he had any tickets on him, D'Allesandro said, "Yes, I do," and gave Sergeant Evans three envelopes. Two tickets were in the names of Mr. and Mrs. M. Carter. On one envelope were stapled three luggage claim checks; one claim check was stapled on Mrs. Carter's ticket and four on Mr. Carter's ticket. Sergeant Evans handed the claim checks to the agent who retrieved eight pieces of luggage which had not yet been put on the plane. The luggage was placed in the trunk of the police vehicle. On the way to the Wilshire Station, Sergeant Evans repeated the statement of constitutional rights to D'Allesandro, Jenkins and Lurie. When they arrived at the station, Sergeant Evans opened the trunk and asked each defendant to identify his piece of luggage; Miss Jenkins *102 pointed to three green pieces, Lurie pointed to three blue pieces, and D'Allesandro pointed to a black leather suitcase. No one claimed the eighth piece of luggage; each of the three defendants denied any knowledge of it. However, the claim check for the eighth suitcase was stapled to the ticket made out in the name of Mrs. M. Carter. It was opened and in it the officers found Mrs. Elkins' furs, other furs, a pair of ladies' capris and shirts with a "Dell" laundry marking; D'Allesandro first denied, then admitted that the shirts belonged to him.
 D'Allesandro stated he traveled under the name of Gary Ryder; Lurie said he frequently used the name Carter and Miss Jenkins admitted she lived with Lurie and also used the name Carter. All three were bound for New York. Mr. Paschke, agent for TWA, testified he had reissued tickets, previously issued in Chicago, to Lurie and Miss Jenkins (Mr. and Mrs. M. Carter) to New York. Lurie and Miss Jenkins told the officers that they had a misdemeanor court appearance on March 30, 1965; D'Allesandro said he was going to New York then Delaware to serve 10 months for obtaining money under false pretenses.
 Defendants neither took the stand nor offered a defense.
 The foregoing demonstrates not only superb police work but an emergency in which the officers were required to act without delay. Based upon his experience, the modus operandi of the I. Magnin robbery, the information received from official sources (People v. Ross, 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606]; People v. Estrada, 234 Cal.App.2d 136, 152 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307]) and the identification by store employees of defendants as having "cased" the store the day before the robbery, Sergeant Evans had a strong suspicion that defendants were implicated in the I. Magnin job; then upon finding them in the process of fleeing the jurisdiction he formed the belief that they had participated in the store robbery. He apprehended them in the course of walking toward a plane bound for New York; within minutes they would have been out of the jurisdiction, perhaps lost forever, with what Sergeant Evans then believed to be the stolen jewelry. About to board the plane, defendants placed the officers in a position affording them no time for deliberation or to obtain a warrant; further, defendants' impending departure from the jurisdiction ended Sergeant Evans' opportunity for further investigation, and immediate action was required. (People v. Sandoval, 65 Cal.2d 303, 310-311 [54 Cal.Rptr. 123, *103 419 P.2d 187].) In the light of the emergency involved, an evaluation of the facts and circumstances confronting Sergeant Evans at the time he was required to act clearly supports the finding of probable cause for the arrest of defendants.
 [5] While appellant concedes that a search incidental to a lawful arrest is valid (People v. Cruz, 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]), he claims that the search of the eighth suitcase was not incident to the arrest which took place at the airport, because it was removed therefrom and opened at Wilshire Station. After D'Allesandro's arrest the officers legally could have searched his person and taken the tickets (People v. Ross, 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606]), but he voluntarily gave the envelopes containing them and luggage claim checks to Sergeant Evans. These were presented by Evans to the agent who retrieved the luggage not yet on the plane. The suitcases were not physically in defendants' possession but it can hardly be denied that through the claim checks D'Allesandro at least had constructive possession of the luggage. In any event there is nothing in the evidence that renders the seizure of the luggage invalid as not incident to defendants' arrest. The luggage accompanied the defendants in the same vehicle from the airport to Wilshire Station. The fact that the officers did not closely examine it until they were able to get it to the station does not affect the validity of the search. Sergeant Evans and his partner were confronted with eight pieces of luggage in a public place and three persons in custody; it was proper to transport the suitcases with the defendants to the station which afforded them better conditions for the search. [6] Where the officers seize evidence incidental to an arrest they may examine it at a place more convenient even though removed in time and place from where the arrest was made. (People v. Talbot, 64 Cal.2d 691, 708 [51 Cal.Rptr. 417, 414 P.2d 633]; People v. Webb, 66 Cal.2d 107, 119-120, 123 [56 Cal.Rptr. 902, 424 P.2d 342].) The officers' actions in obtaining the baggage represented by the claim checks found in D'Allesandro's possession, transporting the luggage to the station in the vehicle in which defendants were riding and examining the bags at the station were "properly incident to, and in every realistic sense were contemporaneous with, appellants' arrest." (People v. Crovedi, 253 Cal.App.2d 739, 745 [61 Cal.Rptr. 349].)
 [7] Appellant argues that as a matter of law the evidence *104 is insufficient to convict him because nothing connects him with Mrs. Elkins' furs; he says there is no showing that he stole the furs or that they were in his luggage or that the suitcase in which they were found or the claim check to redeem the same was in his possession or that anything belonging to him was in the suitcase.
 Lurie and Miss Jenkins lived as husband and wife and traveled together under the fictitious name of Carter; the claim check for the suitcase containing the stolen furs and a pair of ladies' capris was attached to a ticket issued in Lurie's fictitious name. (This distinguishes the case from Nugent v. Superior Court, 254 Cal.App.2d 420 [62 Cal.Rptr. 217], relied upon by appellant.) From this the trier could properly infer that Lurie and Jenkins, despite their denials of any knowledge of the suitcase, had possession of it and its contents--the furs stolen from Mrs. Elkins' apartment only six days before. "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." (People v. McFarland, 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].) Lurie's conduct is wholly consistent with criminal activity--Lurie was using a fictitious name, he had come from Chicago under the name of Carter and was returning under the same name, he had been in California 11 days and since he was due in court in New York on a misdemeanor case the following day, he was not here seeking employment. Lurie's use of a fictitious name, his unexplained reason for being here, his flight from the jurisdiction shortly after the Elkins' robbery and his refusal to identify the suitcase containing the stolen furs in the face of the claim check therefor attached to the ticket in the name Carter and given to police by his traveling companion, D'Allesandro, provide suspicious circumstances pointing to the guilt of Lurie and the corroboration necessary to warrant his conviction. (People v. McFarland, 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; People v. Barnes, 210 Cal.App.2d 740, 745 [26 Cal.Rptr. 793]; People v. Bugg, 204 Cal.App.2d 811, 816-817 [22 Cal.Rptr. 896]; People v. Byrd, 228 Cal.App.2d 646, 650 [39 Cal.Rptr. 644].)
 [8] The cause was submitted to the trial judge on the transcript of the testimony taken at the preliminary hearing and while the stipulation submitting the case recited that all exhibits entered into evidence at the preliminary hearing were *105 deemed entered at the trial subject to objections, it appears that through inadvertence neither the committing magistrate nor the trial judge admitted the exhibits, theretofore marked for identification, in evidence. The reporter's transcript reveals that the People in fact moved for the admission in evidence of 21 exhibits (photos, TWA envelopes, tickets, claim check stubs, shirts and capris), but after the court made its finding that the arrest and subsequent search and seizure were proper, no further reference was made to the People's exhibits. Lurie claims that without the admission of these exhibits the evidence fails to warrant a conviction. Defendant had every opportunity to make this objection at the trial but did not do so. Actually the case was tried by both sides on the theory that the exhibits had been admitted -- defendant's counsel in particular referred to the exhibits in the trial court in his cross-examination of Sergeant Evans. Lurie cannot now raise the matter for the first time on appeal. In any event, we know of no rule requiring material objects referred to in testimony in a case of this kind to be received into evidence. (People v. Anderson, 87 Cal.App.2d 857, 861 [197 P.2d 839].)
 The judgment is affirmed.
 Wood, P. J., and Fourt, J., concurred.